113 So.2d 260 (1959)
CITY OF EUSTIS, a municipal corporation, Appellant,
v.
Charles D. FIRSTER, Appellee.
No. 866.
District Court of Appeal of Florida. Second District.
June 24, 1959.
Neal D. Huebsch, Eustis, for appellant.
Henry L. Pringle, Leesburg, for appellee.
LUCKIE, CHARLES A., Associate Judge.
The appeal is from a mandatory injunction requiring the City of Eustis, Florida, to *261 remove certain piers, docks, and boathouses owned or maintained by the city in Lake Eustis, Florida.
Appellee owns lots 1c, 2c, 3c, and 4c of Clifford Addition to the City of Eustis, and has owned these lots since September 7, 1946. These lots are bounded on the west by Lake Eustis. Gottsche Avenue runs on the north side of lot 1c, which is the northernmost lot, and terminates at the shore of Lake Eustis. A city pier, open to the public, extends westward to Lake Eustis on about the center line of Gottsche Avenue. This pier is perpendicular to the shore and is 252.82 feet long, 216.7 feet of which are over water. At the westerly end of the pier the dock turns at right angles and extends southward an additional 76.6 feet. There are boathouses on the south side of the pier, and these structures overlap the extended south boundary of Gottsche Avenue a distance of 9.6 feet. The result is that if appellee's lot lines were extended the boathouses and the southward extension of the pier would overlap his lot lines, 9.6 feet in the case of the boathouses and considerably more in the case of the southerly extension of the pier. As a further result his view of the lake from his property is somewhat impaired.
The pier and boathouses were originally built in 1921 and, except as hereinafter noted, have remained substantially the same since that date. Certain repairs or additions were made in about 1953 or 1954. The city leases the boathouses to various individuals, none of whom were made parties to the present suit. There are no structures on appellee's land.
To begin with it must be recognized that this case does not deal with an encroachment on appellee's land, since his land is bounded by the waters of Lake Eustis and terminates at the mean high water mark. However, a conveyance of uplands bounded by navigable waters carries with it riparian rights in the waters; so appellee in the present case has riparian, or to be more correct, littoral, rights in the adjoining waters of Lake Eustis by virtue of ownership of his lots. Riparian rights appurtenant to lands bounded by navigable waters are derived from the common law as modified by statute, and riparian rights are legal rights. 65 C.J.S. Navigable Waters § 61, p. 143. In Florida the right of an up-land owner to an unobstructed view of adjoining waters has been recognized as a riparian right. Thiesen v. Gulf, F. & A. Ry. Co., 1918, 75 Fla. 28, 78 So. 491, L.R.A. 1918E, 718; Freed v. Miami Beach Pier Corporation, 1927, 93 Fla. 888, 112 So. 841, 52 A.L.R. 1177; and Hayes v. Bowman, Fla. 1957, 91 So.2d 795. Thus the question in the present case concerns an encroachment by appellant's pier and boathouses on appellee's riparian right to an unobstructed view over the waters of Lake Eustis and, to a lesser extent, to his riparian right of access to those waters.
The matter of laches has been argued on the appeal. This defense was raised by appellant's answer wherein the following was asserted:
"Further answering said paragraph, said defendant alleges that for a period of more than thirty-five years it has maintained and operated said piers, docks and boathouses for the beneficial use of the public with the consent or acquiesence of the State of Florida and the U.S. Army Corps of Engineers for the Jacksonville District of said State of Florida.
"Further answering said paragraph, the defendant alleges that any encroachment now complained of by the plaintiff existed at the time the plaintiff acquired his title to said up-land land, and that any cause of action which he may now claim did not accrue within four years of the filing of this complaint and that the same is, therefore, now barred by any statute of limitations provided by the Statute of Limitations for actions at law.
"Further answering said paragraph said defendant further alleges that the *262 plaintiff, during the entire period that has elapsed since the date he acquired his title to said up-lands land, has stood by and allowed the defendant to maintain and operate said piers, docks and boathouses and to expend periodically during said period large sums of money for the purpose of keeping them in good repair and in safe condition for public use, and that under these circumstances the plaintiff, because of his laches, is now estopped from prosecuting these proceedings for any purpose whatsoever."
Examination of the record discloses that the main dock extends westward from Gottsche Avenue as it is shown on the plat of Clifford Addition of the City of Eustis, dated October 11, 1884. The boathouses with which this suit is involved are situated along the south side of this main dock, and at the westward end of the dock there is a southward extension, giving the dock the shape of an "L". Gottsche Avenue at this point is not paved, but it is a dedicated street maintained by the city for public purposes and the dock is open to the public.
At this point the shoreline of Lake Eustis is straight for practical purposes, and the lot lines are perpendicular to the shoreline. If the lot lines were extended toward the lake, the nearest boathouse would then overlap the north line of lot 1c a distance of 9.6 feet; and the southerly extension of the dock, together with the adjoining boathouses, would overlap such extended lot line approximately 48 feet. Each of the lots is 33 feet wide. Thus the southerly extension of the dock and the adjoining boathouses overlap such extended lot 1c completely and into the extended lot 2c; but it must be emphasized that this portion of the dock is a considerable distance out in the water from the shoreline. The peaks of the roofs of the boathouses are about 14 1/2 feet above the water. The view from the appellee's lots is somewhat impaired straight westerly across the lake, especially as to the view from lot 1c, but it is not impaired by these structures in a southwesterly direction. The right of access to appellee's lots is not cut off at all; although it is necessary for appellee to go slightly southward around the dock extension so as to get out onto the lake, especially should he wish to launch a boat from lot 1c.
As has been previously mentioned herein, the dock and boathouses were built in 1921. These boathouses have been leased from time to time to various individuals, and the city receives the proceeds from such leases. The city has from time to time necessarily expended funds in the maintenance of the structures, there being evidence that approximately $3,000 was expended for general repairs from 1954 through 1956; and appellee testified that in 1954 the city built an additional encroaching boathouse. In addition the lessees of the individual boathouses have been required to maintain them. The record discloses the names of ten lessees of the boathouses, none of whom were made parties to this suit, and further shows that these lessees reside in the cities of Eustis, Mount Dora, and Tavares. Appellee testified that in 1953 or 1954 he saw a notice in the paper advertising that new leases were being made on the boathouses and that the city started making leases to various parties.
The appellee acquired title to his lots on September 7, 1946; and this suit was filed August 27, 1956, approximately ten years after his acquisition of title. The appellee bought his lots sight unseen at a time when the structures now complained of had existed for 25 years. In 1947, about a year after appellee acquired his lots, he constructed a bulkhead along the front of his lots at an average of 20 feet below the mean high water mark, thus encroaching on lands to which he does not hold title. This bulkhead is about 15 feet below the mean high water line at its north end, or the southern boundary of Gottsche Avenue, and about 40 feet below the mean high water mark at its south end. The bulkhead comes to within about a foot and a half of the boathouse situated nearest to the shore, and thus by his own encroachment appellee has for practical *263 purposes deprived himself of even limited access to Lake Eustis from the northern 9.6 feet of lot 1c. After appellee purchased his lots he became aware that the dock and boathouses encroached to some extent on his riparian right to an unobstructed view and to a lesser degree on his right of access to the lake, and he was aware of these encroachments at the time he built the bulkhead in 1947.
The application of the doctrine of laches depends upon the circumstances of each particular case. Norton v. Jones, 1922, 83 Fla. 81, 90 So. 854. It is the doctrine of stale demands. The test of laches is whether there has been a delay which has resulted in the injury, embarrassment, or disadvantage of any person, but particularly the persons against whom relief is sought. Stephenson v. Stephenson, Fla. 1951, 52 So.2d 684. In the present case the appellee brought his suit to overthrow rights long since accrued to the appellant and to third persons almost ten years after he became aware of the circumstances. He bought his property sight unseen when slight investigation could have disclosed the encroachments to the appurtenant riparian rights, of which encroachments he now complains. Through long years since appellee acquired his title, the structures have been maintained by the appellant city and city funds expended for repairs and for building an additional boathouse. Third persons not joined herein have acquired rights in individual boathouses, by virtue of leases obtained, with appellee's knowledge, since he acquired title, and also by virtue of their repairs and maintenance of the same. The remedy of a mandatory injunction for removal of encroachments is a drastic one and should be granted only cautiously and sparingly, depending in each controversy upon circumstances peculiar to it. Johnson v. Killian, 1946, 157 Fla. 754, 27 So.2d 345. In the present case the injunction requiring removal of the encroachments necessarily infringes upon rights long since accrued to the appellant and is accompanied by great mischief done to the rights of third persons. Under the circumstances the defense of laches is shown and the court should not have granted the mandatory injunction as it did. See the cases of Freed v. Miami Beach Pier Corporation, 1927, 93 Fla. 888, 112 So. 841, 52 A.L.R. 1177; Bridgehead Land Co., etc. v. Hale, 1941, 145 Fla. 389, 199 So. 361; and Tampa Southern R. Co. v. Nettles, 1921, 82 Fla. 2, 89 So. 223.
Reversed.
KANNER, C.J., and SHANNON, J., concur.