**IN THE UNITED STATES COURT OF APPEALS**
 **FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 29, 2012

Lyle W. Cayce
Clerk

No. 11-20908

MUTUAL CONCEPTS, INCORPORATED,

Plaintiff - Appellee

v.

FIRST NATIONAL BANK OF OMAHA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:08-CV-03470

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellee Mutual Concepts, Inc. ("Mutual Concepts") sued Defendant-Appellant First National Bank of Omaha ("FNB") for breach of contract arising out of an Affinity Marketing Agreement (the "Affinity Agreement") to create a branded credit card program. A jury found that FNB breached the contract with Mutual Concepts by refusing to compensate under the agreement, and also found that the breach was not excused by FNB's inability to perform. The court, applying Texas choice-of-law rules, granted

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20908

Mutual Concepts' motion for attorney's fees, in spite of the fact that Nebraska law, which disfavors attorney's fees, governed the contract.

FNB contends first on appeal that an error of law occurred, in that Mutual Concepts breached the contract first and is thus barred from recovering damages. FNB also reasserts its claim that it was unable to perform under the contract, and therefore should be excused. Lastly, FNB argues that the district court erred in awarding attorney's fees under Texas law, given the parties' choice-of-law provision specifying Nebraska law. We AFFIRM the judgment on the jury verdict, but REVERSE the award of attorney's fees and RENDER judgment that Mutual Concepts take nothing in attorney's fees.

## I. Factual Background

This contractual dispute arises out of a business arrangement between Mutual Concepts and FNB to create and operate a branded credit card program, known as the Affinity Credit Card Program. Such programs unite a credit card issuer, here FNB, with an "Affinity Partner," who represents a group of individuals with shared interests, and who will assist in marketing the branded credit card to its members. In this dispute the relevant Affinity Partner is "Women of Faith," a Christian-based women's organization. Affinity Partners may seek out credit card issuers directly to sponsor a branded credit card, and vice versa, but in practice they frequently are solicited by a middle-man that serves as an intermediary. Mutual Concepts acted in this capacity here by establishing a relationship with Women of Faith whereby it could use Women of Faith's logo and membership information. It then entered into the Affinity Agreement with FNB as the card issuer.

The Affinity Agreement specified that FNB was to compensate Mutual Concepts based on credit card activity engaged in by the cardholding members. The Affinity Agreement also included a confidentiality provision. In 2003, the Sponsorship Agreement between Women of Faith and Mutual Concepts was

2

renewed for an additional five-year term. Correspondingly, Mutual Concepts and FNB entered into a new Affinity Agreement, which superseded the earlier agreement. Significantly, the 2003 Agreement retained a requirement that FNB pay Mutual Concepts "so long as this Agreement is in effect," but deleted an earlier provision which specified that compensation would terminate at the cancellation or lapse of an Affinity Partner's Sponsorship Agreement with Mutual Concepts. A provision was also included to require that compensation under the Affinity Agreement would continue for two years beyond the end date of the agreement if termination resulted from FNB's material breach, or if FNB agreed to terminate early for a reason other than Mutual Concepts' material breach.

Rather than renewing for a third term with Mutual Concepts, Women of Faith entered into a direct relationship with FNB to continue the branded credit card program. In October 2008, FNB informed Mutual Concepts that it intended to stop payment. Mutual Concepts then filed suit against FNB in Texas state court asserting breach of contract and related claims arising from FNB's new direct agreement with Women of Faith, and claiming that FNB failed to pay the full compensation owed under the agreement. FNB removed the case to federal court. At the summary judgment stage, the court dismissed Mutual Concepts' causes of action for tortious interference with contracts, promissory estoppel and unjust enrichment, rulings not at issue here, thereby leaving only the breach-of-contract and anticipatory breach-of-contract claims.

The case was submitted to the jury. The jury found that FNB failed to comply with the agreement when it refused to compensate Mutual Concepts, that its actions were not excused, and that $911,828.30 would compensate Mutual Concepts for its damages. Mutual Concepts moved to recover attorney's fees under Texas law. The district court heard arguments on the choice-of-law issue and ultimately determined that Mutual Concepts was entitled to attorney's

No. 11-20908

fees. FNB timely appealed the district court's final judgment on the jury verdict and for attorney's fees.

## II. Standard of Review

We review the sufficiency of evidence with great deference to the jury findings and verdict in the court below. *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010). As long as there is a "legally sufficient evidentiary basis for a reasonable jury to find as the jury did," the jury verdict must be upheld. *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039-40 (5th Cir. 2011) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)). The court will reverse "only if the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Bagby*, 609 F.3d at 773 (internal quotation marks and citation omitted).

We review the district court's choice-of-law analysis *de novo. Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010).

## III. Discussion

A. Breach of Contract

We need not spend much time on FNB's challenge to the judgment on the jury verdict. FNB argues that, as a "matter of law," Mutual Concepts "breached first" by revealing certain allegedly confidential information to someone, citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). Having "breached first," FNB argues that Mutual Concepts is unable to recover for FNB's breach of contract. Whatever the merits of such an argument in the abstract—and without reaching the question of whether this argument is waived by failing to raise it in a Rule 50 motion—we conclude it is inapposite here. The conduct underlying any alleged "breach" by revealing confidential information was, at best for FNB, a question of fact that should have been (and was) resolved by the jury in its determination of the breach and excuse questions. We disagree

4

No. 11-20908

that the evidence is such that no other conclusion can be reached but that the alleged breach occurred and was material. We decline to conclude "as a matter of law" that Mutual Concepts is not entitled to recover on the breach of contract found by the jury.[1]

B.    Attorney's Fees

The attorney's fees question is more complex. The Affinity Agreement contains a choice-of-law provision choosing Nebraska law. Under Nebraska law, attorney's fees are not recoverable in a breach-of-contract dispute. *GFH Fin. Servs. Corp. v. Kirk*, 437 N.W.2d 453, 459 (Neb. 1989). Texas, on the other hand, expressly permits recovery of attorney's fees for breach of contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8) (Vernon 2004); *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002). We thus have a "true conflict" between the law of the forum state, Texas, and the law to which the contract directs us, Nebraska, and we must address which state's law applies to this question.[2] *See Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710, 722-23 (5th Cir. 2010) (citing *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 711-12 (Tex. App.—Fort Worth 2003, no pet.)).

An added wrinkle here is that Texas treats recovery of attorney's fees as substantive law, while Nebraska views it as procedural. Thus, Mutual Concepts argues, Nebraska courts would look to the law of the forum state for the award of attorney's fees; FNB counters that Texas courts would look to the law of the state that governs the merits of the dispute.

---

[1] FNB's claim that it was unable to perform its contract with Mutual Concepts is factually inaccurate. It continued the relationship with Women of Faith directly and, therefore, was "able to perform."

[2] The parties do not dispute, and we agree, that the choice-of-law provision governing the contract is enforceable here.

No. 11-20908

While this situation presents a seeming conundrum, we have previously held that "[t]he award of attorney's fees is part of the substantive right of a suit," and that "the award of attorney's fees in a diversity case depends on the law of the state whose rules govern the substantive claims." *Kucel v. Heller*, 813 F.2d 67, 73 (5th Cir. 1987) (citing *Mo. State Ins. Co. v. Jones*, 290 U.S. 199 (1933) and *Prudential Ins. Co. v. Carlson*, 126 F.2d 607, 611 (10th Cir. 1942)). *Kucel* examined the question of whether attorneys' fees were substantive or procedural under the forum's law—that of Texas. We determined that Texas treated attorneys' fees as substantive and, thus, enforcing the choice of law provision, we turned to the law of the governing state—there, it was Illinois. 813 F.2d at 73-74.

Using *Kucel*'s framework here, we look at Nebraska's substantive law, the law that controls the dispute, and analyze whether it provides for attorney's fees. Mutual Concepts' argument that we should then engage in an endless loop with Nebraska looking to Texas and back again (known as *renvoi*) has been rejected by the Second Restatement and disfavored by our court. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(3) ("In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law."); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 8 (directing the court to the "local law" of the governing state, i.e., the law of the governing state without regard to its choice-of-law doctrine); *Brandon v. S.S. Denton*, 302 F.2d 404, 409 n.1 (5th Cir. 1962)(admiralty case declining to apply *renvoi*); *Nailen v. Ford Motor Co.*, 873 F.2d 94, 96-97 (5th Cir. 1989) (declining to adopt *renvoi* in the absence of a clear indication that the state in question would require it).

Thus, if we examine Nebraska local law, exclusive of its choice-of-law rules, we find that Nebraska has a strong policy against fee-shifting by refusing to honor in its courts choice-of-law agreements for the law of sister states providing for attorney's fees. The "procedural" characterization of attorney's fees

6

No. 11-20908

under Nebraska law, then, is simply in support of this public policy. Absent a Nebraska statute awarding attorney's fees, attorney's fees are not recoverable.

We recently examined a similar situation in *Provident Financial, Inc. v. Strategic Energy L.L.C.*, determining whether Texas or Pennsylvania law applied to the award of attorney's fees in a breach-of-contract dispute under Pennsylvania law. 404 F. App'x 835, 839 (5th Cir. 2010) (unpublished). The difference between the jurisdiction's laws was the same: Pennsylvania does not have a statute providing for attorney's fees in a breach-of-contract case, while Texas does. We agreed with the district court, which denied the request for attorney's fees under the Texas statute. *Id.* at 839; *see also Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir. 2004) (finding that while Texas law statutorily provides for attorney's fees, they are not required by public policy).

Following the guidance of the Second Restatement and our decisions in *Kucel* and *Strategic Energy*, we conclude that the district court erred in applying Texas law to the attorney's fees issue; it should have applied Nebraska law.[3] Because attorney's fees are not recoverable under Nebraska law, we REVERSE the award of attorney's fees and RENDER judgment that Mutual Concepts take nothing on its claim for attorney's fees; in all other respects, the district court's judgment is AFFIRMED.

---

[3] As a result, we decline to follow *Mutual of Omaha Ins. Co. v. Halsell*, No. SA-08-CV-785-XR, 2010 WL 638452, at *1-2 (W.D. Tex. Feb. 19, 2010).